1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11  CLIFTON LEWIS,                         )  NO. EDCV 04-00593-MAN
                                           )
12                  Plaintiff,             )
         v.                                )  MEMORANDUM OPINION AND ORDER
13                                         )
                                           )
14  JO ANNE B. BARNHART,                    )
    Commissioner of the                    )
15  Social Security Administration,        )
                                           )
16                  Defendant.             )
    _____)
17

18       Plaintiff filed a Complaint on May 20, 2004, seeking review of the

19  denial by the Social Security Commissioner ("Commissioner") of

20  Plaintiff's claim for disability insurance benefits ("DIB").  42 U.S.C.

21  § 405(g).  On June 14, 2004, the parties filed a "Consent to Proceed

22  Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636.

23  The parties filed a Joint Stipulation on December 13, 2004, in which:

24  Plaintiff seeks an order reversing the Commissioner's decision denying

25  benefits and remanding for further proceedings; and Defendant requests

26  that the Commissioner's decision be affirmed.  The Court has taken the

27  parties' Joint Stipulation under submission without oral argument.

28

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 26, 2001. (Administrative Record ("A.R.") 59-61.)  Plaintiff claims to have been disabled since August 1, 2001, due to a back impairment.  (A.R. 15, 59.) Plaintiff has past relevant experience as a handyman and construction laborer.  (A.R. 15.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 15.)  On February 25, 2003, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge John W. Belcher ("ALJ").  (A.R. 197-227.)  On June 2, 2003, a supplemental hearing was conducted, at which Plaintiff again testified.  (A.R. 228-49.)  In a July 27, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 15-18, 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his July 17, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  (A.R. 18.)  He found that Plaintiff is a "younger individual," and has the equivalent of a high school education.  (*Id.*) He found that Plaintiff has "severe" musculoskeletal impairments, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)

2

The ALJ further found that Plaintiff had the following residual functional capacity assessment:

[Plaintiff] has the residual functional capacity for at least a full range of sedentary work exertionally including the ability to lift and/or carry up to 10 pounds occasionally, sit 6 hours out of a given 8 hour period and stand and/or walk for 2 hours out of a given 8 hour period. [Plaintiff] must be provided a sit/stand option every 3 to 5 hours for 5 to 7 minutes at a time. [Plaintiff] is precluded from work requiring greater than the occasional climbing of stairs, balancing, bending or stooping, kneeling, crouching or crawling and is precluded from work requiring the climbing of ladders or ropes. [Plaintiff] is also to avoid concentrated exposures of extreme could or the use of vibratory tools.

(A.R. 16.)  The ALJ found that Plaintiff testimony was credible, but "failed to establish functional limitations greater than that found herein."  (A.R. 18.)  Based upon the testimony of the vocational expert and using Rule 201.28 of the Medical Vocational Guidelines (the "Grids") as a framework, the ALJ found that Plaintiff was not disabled.[1]  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine

---

[1]    Rule 201.28 directs that a person who is a "younger individual" with a high school education and skills that are not transferable is not disabled. 20 C.F.R. Pt. 220, App. 2.

3

whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges three disputed issues. <u>First</u>, Plaintiff contends that the ALJ erred in analyzing whether Plaintiff's impairments meet or

4

equal Listings 1.04 and/or 1.08.  Second, Plaintiff contends that the ALJ improperly assessed his credibility.  Third, Plaintiff contends that the ALJ failed to provide a complete hypothetical to the vocational expert. (Joint Stip. at 7.)

**A.   The ALJ's Finding That Plaintiff's Impairments Do Not Meet Or Equal A Listed Impairment Is Not Based On Substantial Evidence.**

Conditions contained in Appendix 1, Subpart P, Regulations No. 4 ("Listing of Impairments") are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform her past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1996).  A claimant has the burden of proving that his impairments or combination of impairments meet or equal the requirements of a Listing.  *See* Young v. Sullivan, 911 F.2d 180, 181-85 (9th Cir. 1990).

A claimant meets Listing 1.04, for disorders of the spine, where there is:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.  Spinal arachnoiditis, confirmed by an operative note or

5

pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifesting by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

A claimant meets the version of Listing 1.08 pertinent to this case[2] where there is osteomyelitis or septic arthritis (established by X-ray):

A. Located in the pelvis, vertebra, femur, tibia, or a major joint of an upper or lower extremity, with persistent activity or occurrence of at least two episodes of acute activity within a 5-month period prior to adjudication, manifested by local inflammatory, and systemic signs and laboratory findings (e.g., heat, redness, swelling, leucocytosis, or increased sedimentation rate) and expected to last at least 12 months despite prescribed therapy; or

B. Multiple localizations and systemic manifestations as in A above.

---

[2]   As of March 23, 2006, Listing 1.08 has been substantially revised.

6

1    At the February 25, 2003 hearing, the ALJ questioned Dr. Sami
2  Nafoosi, the medical expert, as to whether Plaintiff's back impairment
3  met the requirements of Listings 1.04 and 1.08, as follows:

5    ALJ: Doctor, if [Plaintiff] were to have another operation, in
6    the very near future here, would his condition be likened to
7    a series of operations to correct a [symptomatology]?

9    ME: Yes.

11    ALJ:  Would that perhaps equal 1.08?

13    ME:  Right.  1.08 or 1.04.

15  (A.R. 220.)  Plaintiff's counsel then requested to supplement the record
16  with additional records.  The ALJ explained that such records could bear
17  upon his ultimate finding of disability, stating:  **"if the records
18  indicate that there is a definite need for additional surgery, assuming
19  that's a fusion then I'm going to find that the gentleman is disabled
20  for a closed period or a period of time that needs to be reviewed . . .
21  based upon 1[.]04."**  (A.R. 224; emphasis added.)

23    In describing the evidence regarding Plaintiff's need for
24  additional back surgery, the ALJ stated:

26    Multiple orthopedists including Dr. Dhillon and Dr. Kim as
27    well as Dr. Froehly, a neurologist, do not recommend
28    additional low back surgery.  Given the studies including x-

rays and MRIs, no precise pathology can be objectively
identified.  There is no evidence of stenosis on the MRI which
tends to negate [Plaintiff's] testimony of a "tight canal."
While there was some fibrosis on the recent MRI, there is no
indication of impact on any nerves.  No physician has told
[Plaintiff] he could not return to work, and it would appear
that a work hardening program would be appropriate.  Despite
counsel's brief at Exhibit 6F argument that [Plaintiff's]
symptoms affect [Plaintiff] in a way prohibiting him from
working, there remains no objective basis in which to do so.

(A.R. 17.)

Plaintiff argues that the opinion of Dr. Michael Roach, Plaintiff's
primary treating orthopedist, who recommended that Plaintiff undergo a
second follow-up surgery of a multi-level fusion in his lumbar spine,
constitutes sufficient evidence to show that Plaintiff met Listings 1.04
and/or 1.08.  (Joint Stip. at 7.)  While Plaintiff concedes that other
doctors, such as Dr. Froehly, a neurologist, suggested different courses
of action to treat his lumbar condition, Plaintiff maintains that the
ALJ should have found that Plaintiff met or equaled these Listings,
because Plaintiff's "consistent and chronic symptoms" continue.  (Joint
Stip. at 7-8.)  Plaintiff further maintains that "[n]one of the forms of
conservative treatment that has been rendered to this Plaintiff has had
any lasting success whatsoever," and that neither the medical expert or
the ALJ stated "with any specificity . . . why those listings would not
be equaled if Plaintiff did not require a second surgery to his lumbar
spine."  (Joint Stip. at 8.)

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p.  The opinions of other physicians -- examining physicians and non-examining medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); Andrews, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").  However, the opinion of a non-examining physician, with nothing more, does not constitute substantial evidence. Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

Here, there is no dispute that Plaintiff's treating doctor, Dr. Roach, recommended fusion surgery in 2002. (*See* A.R. 178 -- Dr. Roach's August 6, 2002 progress note.)  The record is less clear, however, as to whether other doctors have found that Plaintiff needs such surgery.  In October 10, 2002 progress notes, Dr. David Thio, a treating doctor, noted that Plaintiff reported that "[he] has been seen for a second opinion by the orthopedist at Loma Linda, he was told the same thing, that he requires surgery." (A.R. 173.)  However, in a November 19, 2002

report, Dr. Froehly, a neurologist declined to recommend surgery, stating: "[i]t is difficult to recommend any surgical procedure when there is no demonstrated physical condition producing a nerve compression[;] rather some local reactive and muscle reactive pain condition appears present" and "[w]hether additional lumbar cortisone injections or other orthopedic procedures would be helpful in this regard, I would not venture to predict." (A.R. 168.)

At the February 25, 2003 hearing, Plaintiff testified that he cancelled his fusion surgery with Dr. Roach, because he was not pleased with the results of Dr. Roach's first herniated disk surgery in November 2001, and wanted to go to a different doctor. (A.R. 202.) Plaintiff further testified at that hearing that he changed from Dr. Roach to Dr. H. Dhillon, another orthopedic surgeon, who recommended fusion surgery, but wanted Plaintiff to try wearing a full back brace first. (A.R. 206-07, 211-12.) Plaintiff also testified that Dr. Kim recommended that Plaintiff undergo fusion surgery. (A.R. 212; *see also* 204 -- Plaintiff's counsel stating at the February 25, 2003 hearing that "everybody's telling [Plaintiff] that . . . he needs the surgery.") At the end of the February 25, 2003 hearing, the ALJ stated that "if the records tend to indicate that another surgery is needed, not just possible or might be beneficial but . . is appropriate then I would be willing to find disability on that and then recommend review in a period of time." (A.R. 222.)

At the February 25, 2003 hearing, Dr. Nafoosi, the medical expert, testified that Plaintiff's herniated disk was resolved, but that Plaintiff continued to have degenerative disk disease. (A.R. 216-17.)

Dr. Nafoosi opined, however, that this impairment did not meet or equal a Listing. (A.R. 217.) He further opined that Plaintiff was limited to "light" work with further non-exertional limitations. (*Id.*) When questioned as to whether Plaintiff would need further restrictions on balancing, uneven ground or heights, Dr. Nafoosi explained that he did not believe that it was "medically determinable" because the records he reviewed did "not show that." (A.R. 218.) Dr. Nafoosi testified that he would expect to see evidence of spinal nerve deterioration in order to validate an opinion that Plaintiff would need further restrictions, but that he did not believe that such spinal deterioration was present, because it would have been seen on the first MRI. (*Id.*) However, although the critical issue to be resolved was whether the record showed that Plaintiff required additional fusion surgery, Dr. Nafoosi did not testify on this issue at the February 25, 2003 hearing and did not testify at the June 2, 2003 hearing.

Following the February 25, 2003 hearing, Plaintiff's counsel submitted additional records in a March 10, 2003 letter. Despite his contention at the February 25, 2003 hearing that doctors aside from Dr. Roach were recommending fusion surgery, counsel stated in his subsequent submission that: "the orthopedists Dr. Dhillon, and Dr. Kim, and the neurologist Dr. Froehly are <u>not</u> recommending an additional lower back surgery at this time." (A.R. 155; emphasis added.) These additional records include a September 16, 2002 report from Dr. Kim, which notes that Plaintiff "keeps his back in the bent position," and was experiencing "significant stiffness" in the lumbar area. (A.R. 193.) Dr. Kim further noted that a March 1, 2002 MRI revealed degenerative changes in the L3-4, L4-5 levels, but that there were "no significant

neurological deficit[s] other than decreased sensation over the thigh area." (*Id.*) Dr. Kim recommended that Plaintiff "[r]eturn to Dr. Roach for treatment according to his recommendation [which was that further surgery was required]." (*Id.*)  At the June 2, 2003 hearing, Plaintiff testified that Dr. Dhillon stated that fusion surgery "might fix" his back, but that there was "[n]o guarantee that it would take the pain out."  (A.R. 233.)

Not one of the additional records contains an opinion, aside from Dr. Roach's opinion, clearly and affirmatively addressing whether or not Plaintiff needs additional surgery -- the one point highlighted by Dr. Nafoosi's testimony as critical to the determination of whether Plaintiff's back impairment meets or equals a Listing.  The ALJ's summary of these records, that "no precise pathology can be objectively identified," appears to be based on his own interpretation of the additional medical evidence and does not constitute substantial evidence to support the conclusion that such further surgery is not necessary. *See* <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Here, because not even Plaintiff felt that he received proper treatment from Dr. Roach, the Court cannot accept Plaintiff's present argument that Dr. Roach's opinion that Plaintiff needs additional fusion surgery constitutes substantial evidence that Plaintiff meets or equals a Listing.  Especially in light of the inconsistencies between Plaintiff's testimony and the assertions of his counsel regarding Plaintiff's need for additional surgery, and the ALJ's own assertion

that this is a close case (A.R. 245), further development of the record is necessary to determine whether Plaintiff needs fusion surgery. <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence); 20 C.F.R. §§ 404.1517, 416.917 (when a claimant's medical sources provide insufficient evidence in order to determine whether the claimant is disabled, a consultative examination may be ordered); 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002)(requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

The ALJ should clarify and develop the record as to whether Plaintiff's back impairment requires fusion surgery, and therefore meets a Listing, through eliciting an additional opinion on this specific issue from a medical expert, an examining doctor, or one of Plaintiff's treating doctors. Accordingly, the ALJ's finding that Plaintiff does not meet or equal a Listing is not based on substantial evidence and constitutes reversible error.

B.   **The ALJ Improperly Rejected Plaintiff's Credibility**.

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not

13

discredit the claimant's testimony as to his subjective symptoms merely because they are not corroborated by objective evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).  This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  Bunnell, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Light, 119 F.3d at 792.  In determining whether a claimant's testimony regarding the severity of his symptoms is

1  credible, the ALJ may consider:  "(1) ordinary techniques of credibility
2  evaluation,   such   as   the   claimant's   reputation   for   lying,   prior
3  inconsistent statements concerning the symptoms, and other testimony by
4  the   claimant   that   appears   less   than   candid;   (2)   unexplained   or
5  inadequately   explained   failure   to   seek   treatment   or   to   follow   a
6  prescribed   course   of   treatment;   and   (3)   the   claimant's   daily
7  activities."  <u>Smolen</u>, 80 F.3d at 1284.

8

9      The   Court   will   give   great   weight   to   the   ALJ's   credibility
10 assessment.  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);
11 <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that
12 the   ALJ's   credibility   determination   is   to   be   given   great   weight   when
13 supported   specifically).   However,   when   an   ALJ's   decision   rests   on   a
14 negative   credibility   evaluation,   "the   ALJ   must   make   findings   on   the
15 record   and   must   support   those   findings   by   pointing   to   substantial
16 evidence on the record."  <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th
17 Cir.   1991);   <u>Oreteza v. Shalala</u>,   50   F.3d   748,   750   (9th   Cir.   1995)(the
18 ALJ's   findings   must   be   "sufficiently   specific   to   permit   the   reviewing
19 court   to   conclude   that   the   ALJ   did   not   arbitrarily   discredit   the
20 claimant's testimony.")  When discrediting a claimant's testimony, it is
21 not   enough   for   the   ALJ   to   make   only   general   findings;   he   must   state
22 which pain testimony is not credible and what evidence suggests that the
23 complaints are not credible.  *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688
24 (9th   Cir.   1979);   *see also* <u>Lester</u>,   81   F.3d   at   834   (an   ALJ   may   reject   a
25 plaintiff's   testimony   based   on   lack   of   credibility   only   if   the   ALJ
26 states specific and cogent reasons for doing so).

27

28      Although   the   ALJ   stated   that   he   found   Plaintiff's   testimony

"credible" (A.R. 17, 18), he nonetheless rejected Plaintiff's contention that his claimed symptoms rendered him unable to work, stating:

> While [Plaintiff] credibly testified at the hearing that he honestly has pain, his testimony fails to establish functional limitations greater than that found herein.  [Plaintiff] described his pain as a three to four on a one to ten pain scale which is generally found to be at the slight to moderate level.   [Plaintiff] did describe his pain as a ten in the morning which decreased to a three to four within 45 minutes to one hour after waking.  He testified that a heating pad helps his muscles, but [Plaintiff] has made no new effort at participating in physical therapy. . . .  Despite counsel's brief at Exhibit 6F arguing that [Plaintiff's] symptoms affect [Plaintiff] in a way prohibiting him from working, there remains no objective basis in which to do so.

(A.R. 17.)

Here, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for disregarding his claimed symptoms.  (Joint Stip. at 9.)  Plaintiff testified that, since his surgery, he spends most of his day in a reclining chair.  (A.R. 209-10.)  In addition, Plaintiff testified that he helps with the dishes "once [in a] while," but that his wife takes out the garbage and vacuums.  (A.R. 212.)  When the ALJ questioned Plaintiff whether could drive for one to two hours, Plaintiff testified that "I don't think my back would last that much plus the drugs I'm taking and stuff, and I'm not supposed to be driving."  (A.R.

16

214.)  Plaintiff has taken Vicodin, a narcotic pain reliever, for his back pain, which upsets his stomach.  (*Id.*)  Plaintiff testified that he does find relief from his back pain by lying in a recliner, restricting his activities, taking pain pills, and using a heating pad, but he had to stop using the heating pad because it burned his back.  (A.R. 235.) Plaintiff further testified that Dr. Dhillon told him that physical therapy would not help him.  (A.R. 243.)

Here, the ALJ's credibility rejection appears to hinge on the assertion that "there remains no objective basis" for the magnitude of Plaintiff's claimed pain and symptoms.  However, the record does contain objective testing demonstrating a basis for Plaintiff's claimed pain. (*See* A.R. 122 -- July 2, 2002 report noting x-rays showing settling of the 3-4 disk space; 157-58 -- January 31, 2003 MRI showing "stable, mild, multifactorial narrowing of the anteroposterior diameter of the bony central canal at L1-2 but without significant stenosis or interval change," "status post prior left hemilamectomy diskectomy at L3-4 with stable mild enhancing epidural fibrosis without residual or recurrent disk bulging or herniation," and "minimal posterior disk bulging at L4-5 without an associated thecal sac or exiting nerve root impingement"; 140 -- November 2, 2001 x-ray showing "small focal impressions on the end plates of L1 and L2, characteristic for Schmorl's node formations").  It is well-established that it is error to require a claimant to adduce objective medical evidence to support the severity of her asserted pain or symptoms.  *See* Tonapetyan, 242 F.3d at 1147-48; Bunnell, 947 F.2d at 345; Fair, 885 F.2d at 601.  Moreover, even Dr. Nafoosi testified that it is possible that an individual with Plaintiff's history could be experiencing significant levels of pain.  (A.R. 219.)  Thus, the ALJ did

not provide clear and convincing reasons for his rejection of Plaintiff's credibility.

Defendant argues, based on Morgan, *supra*, that Dr. Froehly's observation -- that there was no basis for a nerve compression and that Plaintiff's pain was "local reactive and muscle reactive" -- is a sufficient basis for the ALJ's credibility rejection. That argument is unfounded. In Morgan, there were specific inconsistencies noted in the observations of physicians who treated or examined the claimant that undermined the claimant's own allegations. 169 F.3d at 599-600 (comments in reports of a claimant's treating doctors regarding the claimant's improvement as well as inconsistent statements the claimant made to physicians undermined the claimant's denial that his condition had improved). To the extent that Defendant proffers further arguments that the record demonstrates reasons for rejecting Plaintiff's credibility that the ALJ did not specifically discuss in the decision, such arguments are similarly unavailing. A reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ, or on the Commissioner's after-the-fact attempt to supply a basis for decision. *See* Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)(noting that a reviewing court is "constrained to review the reasons the ALJ asserts," and an ALJ's decision cannot be affirmed on the basis of evidence he did not discuss); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)(an agency decision cannot be affirmed on the basis of a ground that the agency did not invoke in making its decision); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996).

18

Although Plaintiff's primary alleged limitation is constant back pain, he also has alleged:  pain and numbness in his left leg extending from his left thigh to his foot (A.R. 207-09, 234-35), pain when walking such that he needs to walk bent over (A.R. 209), and pain when sitting (*id.*).  While the ALJ's finding that Plaintiff should be limited to "sedentary" work may account for some of these alleged limitations, the ALJ should nevertheless address each of Plaintiff's claimed limitations in his decision on remand. *See* <u>Swenson</u>, 876 F.2d at 688 (the ALJ must delineate or differentiate the reasons for rejecting each one of a claimant's alleged limitations).

Accordingly, the ALJ's credibility finding constitutes reversible error.

**C.** <u>**Further Testimony Of A Vocational Expert Likely Will Be Required On Remand**</u>**.**

Because the record must be developed regarding Plaintiff's back impairment and the finding regarding Plaintiff's allegations of pain and symptoms must be reevaluated on remand, Plaintiff's ultimate residual functional capacity assessment may change.  An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations. *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 729 (9th Cir. 1998)(because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert).  If the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value. *See* <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a

19

vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).  Therefore, the Court does not reach the third issue raised by Plaintiff (*i.e.*, regarding the propriety of the hypothetical posed to the vocational expert), as the ultimate finding regarding Plaintiff's residual functional capacity may change and additional testimony from a vocational expert likely will be required.

**D.   Remand Is Required.**

Where, as in this case, the record needs to be developed and there are errors in the ALJ's findings, remand is appropriate to allow the ALJ the opportunity to remedy those inadequacies and errors.  *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///

20

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 30, 2006.

                                        /s/
                              MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE